J-S06014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANEL CUENAS :
:
Appellant : No. 1500 EDA 2020

Appeal from the PCRA Order Entered July 21, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002610-2011

BEFORE: PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED:  MAY 28, 2021**

Anel Cuenas appeals from the order of the Court of Common Pleas of Philadelphia County dismissing his timely, first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546. Cuenas was convicted of aggravated assault and other charges after he shot and injured a Philadelphia police officer. In the nine claims he raises on appeal, Cuenas challenges trial counsel's effectiveness and the PCRA court's rulings on Cuenas's requests for discovery and the appointment of experts. We agree with the PCRA court that Cuenas has not shown that counsel was ineffective or that he was entitled to discovery or the appointment of an expert. We therefore affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

At approximately 8:38 p.m. on July 15, 2010, Philadelphia Police Officers Brian Issel and Kevin Livewell were on patrol near Water Street in Philadelphia when they received a radio call to be on the lookout for a white van with the letters KASS on the side. The radio call informed the officers that the occupants of the van were wanted for a possible prior shooting and should be considered armed and dangerous. Officers Issel and Livewell spotted the van and began to follow it. The van turned onto the 3000 block of Water Street and abruptly pulled over.

The door on the driver side of the van began to open. The officers exited their vehicle and instructed the driver to stay inside the van, which the driver did. However, a man, later identified as Cuenas, appeared on the passenger side of the van carrying an assault rifle and fired several shots at the officers. One of the shots hit Officer Livewell. The officers exchanged gunfire with Cuenas and another armed male, later identified as Richard Martinez. Both men fled. The driver of the van, identified as Ramon DeJesus, was arrested.

Officer Joseph Moore arrived on the scene minutes after the shooting and began searching for the shooters. Officer Moore found a black knit hat outside the passenger door of the van, which a witness had seen the shooter remove. Officer Moore then found a ski mask and assault rifle underneath a parked red minivan. He proceeded down an alleyway and saw an assault rifle in the yard of 3047 Water Street. While in the alleyway, a civilian directed

Officer Moore to 3037 Water Street, the rear of which faced the alleyway. Officer Moore searched the house but did not find the shooters.

The police recovered additional firearms from inside the white van during a subsequent search. The police also lifted latent prints from the exterior of the dining room window at the rear of 3037 Water Street. Both Officer Issel and Officer Livewell, who was in the hospital recovering from the surgery required by the gunshot, positively identified Cuenas as the shooter in separate photo arrays.

Cuenas was eventually apprehended on July 17, 2010, at the home of Maria Rivera, whose sister is married to Cuenas's cousin. Rivera told police that Cuenas had come to her house around midnight on July 16, 2010, wearing a wig and a hoodie. He asked Rivera if he could stay at her house after indicating the police were looking for him in connection with the shooting and that he had been a passenger in the white van.

Cuenas was charged with multiple crimes, including two counts of attempted murder. He proceeded to a jury trial on March 7, 2013. At trial, both Officers Issel and Livewell definitively identified Cuenas as the man who shot at them. Scott Copeland, a latent fingerprint expert, testified that two of the latent palm prints lifted from the exterior of the rear dining room window of 3037 Water Street matched the known palm prints of Cuenas. **See** N.T. Trial, 3/11/13, at 149.

The Commonwealth also called Bryne Strother, a DNA expert who conducted DNA analysis on the evidence obtained from the scenes of the shooting and the surrounding area. Strother testified that Cuenas could not be excluded as a contributor to the DNA samples taken from numerous pieces of evidence, including the black knit hat found by the white van, the interior controls of the van, a handgun found inside the van, and the assault rifle found under the red minivan. **See** N.T. Trial, 3/12/13, at 13-14, 16, 17-18, 21-22; **see also id.** at 12 (Strother testifying that "cannot be excluded also means included [,] just more conservative wording"). She also stated that Cuenas was included as a source of the DNA detected on the magazine and ammunition from the assault rifle recovered from the yard of 3047 Water Street. **See id**. at 24.

The jury did not convict Cuneas of the two counts of attempted murder. The jury did, however, convict him of two counts of aggravated assault, one count of assault on a law enforcement officer, eight counts of firearms not to be carried without a license, one count of possessing an instrument of crime and one count of conspiracy to commit aggravated assault. The trial court sentenced him to an aggregate term of imprisonment of 45 to 100 years.

Cuenas filed a direct appeal to this Court, which affirmed his judgment of sentence. Our Supreme Court then denied Cuenas's petition for allowance of appeal. Cuenas filed a timely *pro se* PCRA petition. He then retained private counsel, who filed an amended PCRA petition. After counsel was permitted to

withdraw, Cuenas retained new private counsel. New counsel filed a second amended PCRA petition, and then a supplemental amended PCRA petition, on behalf of Cuenas.

The Commonwealth filed a motion to dismiss the PCRA petition, and the court issued a Pa.R.Crim.P 907 notice of intent to dismiss the petition without a hearing. The PCRA court formally denied Cuenas's PCRA petition on July 21, 2020, and Cuenas timely filed the instant notice of appeal to this Court. Cuenas complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, in which Cuenas raised twelve alleged errors. In response, the PCRA court issued a Pa.R.A.P. 1925(a) opinion addressing each of Cuenas's twelve claims. The court found that none of those claims had any merit and therefore concluded that it had properly denied Cuenas's PCRA petition.

We review the PCRA court's determinations to determine if they are supported by the record and free of legal error. *See Commonwealth v. Roney*, 79 A.3d 595, 603 (Pa. 2013). The PCRA court's credibility determinations, when supported by the record, are binding on this Court. *See id*. However, we apply a *de novo* standard of review to the PCRA court's legal conclusions. *See id.*

All but one of Cuenas's claims on appeal challenge trial counsel's representation in some capacity. The law presumes that counsel was effective. *See Commonwealth v. Brooks,* 839 A.2d 245, 248 (Pa. 2003). In order to

overcome that presumption and prevail on a claim of ineffectiveness, Cuenas must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his course of conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question, the outcome of the proceeding would have been different. **See id**. Counsel cannot be deemed ineffective for failing to raise a meritless claim. **See Commonwealth v. Sneed**, 45 A.3d 1096, 1115 (Pa. 2012).

In his first claim on appeal, Cuenas maintains that trial counsel was ineffective for failing to seek suppression of Officer Issel's and Officer Livewell's identification of him as the shooter. Cuenas's arguments in support of this claim are, to be generous, less than clear.[1] He appears to contend that counsel should have sought suppression on the basis that the photo array used in the pre-trial identification was unreliable and improperly compiled. This claim fails.

Identification evidence will only be suppressed if the identification procedure was impermissibly suggestive. **See Commonwealth v. Stiles**, 143 A.3d 968, 978 (Pa. Super. 2016). A pre-trial photo array identification

---

[1] Unfortunately, this sets the tone for the remainder of Cuenas's brief, which is full of generalized assertions and arguments that are difficult to follow. Nonetheless, we have conducted a review on the merits of what we discern Cuenas's arguments to be, unless they are too underdeveloped to allow for such review.

procedure is not unduly suggestive if the suspect's photograph does not stand out from the others and the people depicted in the array have similar facial characteristics. *See id.*

The main thrust of Cuenas's complaint regarding the photo array does not seem to be that his photograph in the array was unduly suggestive. Rather, he first seems to allege that the photo array was unreliable because none of the photos contained in the array matched the officers' description of the shooter. To that end, he contends that detectives improperly created a photo array consisting of himself, a light-skinned and red-haired Latino, and seven other light-skinned males when Officers Livewell and Issel described the shooter as "Hispanic." Because the photos did not contain men with what Cuenas claims to be the "stereotypical" darker skin tone of Hispanics, he avers that "it is a reasonable deduction that detectives created the array on something other than [Officers] Issel and Livewell's descriptions." Appellant's Brief at 17, 19. Without pinpointing what that "something other" may be, Cuenas insinuates that the inclusion of his photo in the array was based on some sort of police malfeasance. However, as the PCRA court stated when rejecting this claim below:

> [Cuenas's claim] is refuted by [Cuenas's] own exhibit … , the affidavit of probable cause [, which] indicates that the driver of the van, Ramon DeJesus, had identified [Cuenas] as one of the passengers in the van who had jumped out and fired at the officers. As a result, any motion challenging the basis for including [Cuenas] in a photo array would have been baseless.

PCRA Court Opinion, 10/13/20, at 9.

Cuenas does not address the PCRA court's conclusion in this regard, much less establish that it was erroneous. As we discern no error, we agree with the PCRA court that counsel was not ineffective for failing to pursue this meritless claim. **See Sneed**, 45 A.3d at 1115.

Cuenas also suggests that Officer Issel and Livewell did not base their identification of Cuenas as the shooter on their observations but rather were "fed … information about the investigation" from the detectives which apparently prompted them to identify Cuenas as the shooter from the photo array. Appellant's Brief at 21. This claim, however, is not only undeveloped but refuted by the record. As the Commonwealth explains:

> [Officer Issel] testified that at the time of the crime (8:38 p.m. on July 15, 2010), it was still light outside and the area was illuminated by street and house lights. From approximately fifteen feet away, Officer Issel 'observed [Cuenas] clearly shooting the rifle at myself and my partner. I saw his face. I saw him turn and run.' When detectives showed [Officer Issel] the photo array on July 16, 2010 (the day after the shooting), none of the detectives or anyone else had informed him about any specifics regarding the investigation. Officer Issel was not aware of anything that homicide detectives or the Crime Scene Unit had done on the case, and he was not on the scene when the Crime Scene Unit was there (N.T., 3/7/13, at 32-73).

> [Officer Livewell] testified that while he was being treated at the hospital, no detectives informed him of anything about the investigation. No one from the Police Department gave him any updates on the case. When he viewed the photo array, no one gave him any indication about whether any suspect was in the array or where he was positioned. Officer Livewell unwaveringly identified [Cuenas] as 'the one that came out of the van and started shooting that night.' … (N.T., 3/8/13, at 32-81).

Commonwealth's Brief at 17.

- 8 -

Despite this testimony, Cuenas baldly asserts that the officers did not base their identification of Cuenas on their own observations, but rather, on some sort of nefarious police conduct. He suggests in a later part of his brief that the detectives simply told the officers to identify Cuenas as the shooter. *See* Appellant's Brief at 64. However, Cuenas offers nothing in support of his claim, other than wildly speculative and unsubstantiated allegations. *See Commonwealth v. Jones*, 811 A.2d 994, 1003 (Pa. 2002) (stating that claims of ineffectiveness are not self-proving and therefore an appellant's undeveloped arguments with respect to counsel are insufficient to establish an entitlement to relief). And those allegations are, in turn, flatly contradicted by the officers' testimony. We agree with the PCRA court that Cuenas's claim that counsel was ineffective for failing to seek suppression of the officers' identification based on the photo array offers him no basis for relief.[2]

Cuenas's next four claims involve the finger/palm prints that were found on the exterior dining room window of the house at 3037 Water Street. As noted above, those prints were lifted from the window after a civilian directed

_____

[2] To the extent that Cuenas is arguing that the photo array was unduly suggestive when he lists "suggestiveness" and "unreliability" factors, *see* Appellant's Brief at 22-23, our own review of the photo array leaves us in agreement with the Commonwealth that Cuenas's photo did not stand out more than the others. *See* Commonwealth's Brief at 15.

Officer Moore to the 3037 Water Street address when he was looking for the shooters.

Cuenas first alleges counsel should have filed a motion to suppress this print evidence because "the Commonwealth presented no evidence as to when the allegedly incriminating fingerprints were placed on the window." Appellant's Brief at 23. As the PCRA court found, however, this claim would not have been the proper subject of a suppression motion given that the claim is not based on allegations of police misconduct. **See Commonwealth v. Sanders,** 42 A.3d 325, 330 (Pa. Super. 2012) (stating that the purpose of suppression is to prevent police misconduct). Rather, it goes to the weight to be afforded to this evidence. **See** PCRA Court Opinion, 10/13/20, at 17 (stating that this claim "confuses the issues of suppression of evidence versus the weight to be afforded evidence"); **see also Commonwealth v. Williams**, 58 A.3d 796, 801 (Pa. Super. 2012) (observing that any uncertainty as to whether a weapon in the defendant's possession was the one used in a given crime is a question of the weight of the evidence, not its admissibility). This claim is therefore without merit.[3]

Cuenas also alleges counsel was ineffective for failing to seek suppression of the print evidence because the Commonwealth failed to provide

---

[3] We also note that trial counsel asked the officer who lifted the prints from the window whether it could be determined when the prints were laid there. **See** N.T. Trial, 3/11/13, at 45. The officer responded that it could not. **See id**.

a nexus between his known palm prints and the latent prints recovered from the window at 3037 Water Street. Once again, this claim does not seem to allege police misconduct and therefore would not be the proper subject of a suppression motion. **See Sanders,** 42 A.3d at 330. In any event, as the Commonwealth points out, this claim is also belied by the record.

Copeland testified that two latent prints, Number 7 and Number 11, matched Cuenas's known palm prints. **See** N.T. Trial, 3/11/13, at 148-149. Copeland then used latent print Number 11 as an example to describe exactly how a known print is compared to a latent print. **See id**. at 150-151. As the Commonwealth did connect Cuenas's prints to the latent prints, Cuenas's claim alleging otherwise necessarily fails. Therefore, counsel cannot be said to have been ineffective for failing to seek suppression on this basis. **See Sneed**, 45 A.3d at 1115.

Next, Cuenas claims that counsel was ineffective for failing to retain a fingerprint, DNA and forensic pathology expert and that the PCRA court erred by denying his request for the appointment of forensic experts. These claims both fail.

When an appellant claims that counsel was ineffective because "some sort of expert testimony should have been introduced at trial, the [appellant] must articulate what evidence was available and identify the witness who was willing to offer such evidence." **Commonwealth v. Williams**, 640 A.2d 1251, 1265 (Pa. 1994). He must also show that he was prejudiced by the absence

of the testimony by demonstrating how the uncalled expert would have been helpful to his defense under the circumstances of his case. ***See Commonwealth v. Williams***, 141 A.3d 440, 460 (Pa. 2016).

Following the filing of the supplemental amended PCRA petition, current PCRA counsel filed a motion for the appointment of a fingerprint identification expert witness. The motion did not identify the expert Cuenas wished to retain. Accordingly, the PCRA court instructed counsel to amend the motion to include the identification of the expert, the costs of the expert, and an offer of proof regarding the expert's testimony. Counsel filed an amended motion, which identified Robert Garrett of North Carolina as the fingerprint expert Cuenas wished the court to appoint. The motion attached Garett's hourly rate for evaluating prints and for testifying. The motion did not, however, include any expenses regarding travel and lodging for Garrett given his out-of-state status and, most importantly, did not offer a proffer as to what Garrett's testimony would be. The PCRA court denied the motion.

Cuenas now asserts that trial counsel should have presented not only a fingerprint expert but a DNA analyst and forensic pathologist as well, and the PCRA court should have appointed all three. However, the motion to appoint an expert only included a request for a fingerprint expert, so it is clear the PCRA court did not err in failing to appoint unrequested and unidentified experts. Moreover, as the PCRA court specifically noted, Cuenas never identified any DNA expert or forensic pathologist or articulated what testimony

they would have provided. **See** PCRA Court Opinion, 10/13/20, at 11. We agree with the PCRA court that Cuenas's claim regarding counsel's failure to present a DNA analyst and forensic pathologist fails for this reason alone. **See Williams**, 640 A.2d at 1265.

As for his claim that counsel was ineffective for failing to consult with and present a finger/palm print expert, Cuenas has not in any way indicated what Garrett's testimony would have been or how he was prejudiced by the absence of that testimony. There is nothing from Garrett suggesting that the Commonwealth's finger/palm print analysis was improper or that its conclusions were wrong in any way. While Cuenas offers vague and speculative assertions that Garrett may have been able to refute the Commonwealth's evidence in some way, he concedes that this is insufficient to establish how the absence of Garrett's testimony prejudiced him. **See** Appellant's Brief at 32; **see also Commonwealth v. Bryant,** 855 A.2d 726, 745 (Pa. 2004) (rejecting the defendant's claim that counsel was ineffective for not consulting with and presenting a forensic expert to refute the Commonwealth's evidence where the defendant only offered a speculative assertion that an expert's testimony could have refuted the Commonwealth's theory).

Cuenas therefore seems to assert that the PCRA court erred by denying his request for the appointment of Garrett because Garrett's findings may

have been able to establish that he was prejudiced by trial counsel's failure to present a fingerprint expert. This claim also warrants no relief.

The provision of public funds to hire experts to assist the defense is a matter vested in the sound discretion of the PCRA court. **See Commonwealth v. Reid**, 99 A.3d 470, 505 (Pa. 2014). Our Supreme Court has stated:

> This court has never decided that such an appointment [of an expert] is required in a PCRA proceeding. We must review the PCRA court's exercise of its discretion in the context of the request, that an expert's testimony is necessary to establish his entitlement to relief under 42 Pa.C.S. 9543(a)(2)(vi), the provision of the PCRA which deals with claims of innocence based on after-discovered evidence.

**Commonwealth v. Albrecht,** 720 A.2d 693, 707 (Pa. 1998). In order to obtain relief on this basis, a petitioner must show, among other things, that the after-discovered evidence is of such a nature that it would compel a different outcome. **See id.**

Here, Cuenas requested the PCRA court to appoint a fingerprint expert for him. The PCRA court instructed Cuenas to amend his motion seeking that appointment so as to include the name of the expert he wanted appointed, a list of that expert's expenses and a proffer of that expert's testimony. Cuenas did amend his motion, but only included the name of the expert and an incomplete listing of his expenses. We cannot say that the PCRA court abused its discretion by denying Cuenas's request when he failed to amend his deficient motion in a way that complied with the court's instructions.

Moreover, the PCRA court found that Cuenas had not shown that fingerprint expert evidence would have compelled a different outcome. The PCRA court reasoned that "even a favorable result from a fingerprint expert would not have altered the outcome at trial" given that the evidence presented by the Commonwealth would still have been overwhelming. PCRA Court Opinion, 10/13/20, at 11; *see also id.* at 24. To that end, the PCRA court noted that Officers Issel and Livewell identified Cuenas as the shooter, and that Cuenas could not be excluded as a source of the DNA found on the knit hat next to the white van, interior controls of the van, the assault rifle recovered under the parked red minivan and a second assault rifle recovered from the yard of 3047 Water Street. Rivera also testified that Cuenas told her he was a passenger in the white van when the shooting occurred. Based on all of the above, we see no abuse of discretion in the PCRA court's decision to deny the appointment of Garrett as a fingerprint expert. *See Albrecht*, 720 A.2d at 707.

Next, Cuenas argues that the PCRA court erred in denying his request for production of DNA raw data, Latent Print Number 7 and Latent Print Number 12, and the photographs of his left foot so that he could have an independent analyst, fingerprint examiner and forensic pathologist examine the evidence. This claim also fails.

In the first instance, we agree with the Commonwealth that this issue is moot given our conclusion above that there is no merit to Cuenas's claim that

the PCRA court erred by failing to appoint these experts. Moreover, as the PCRA court explained, Cuenas's claim misrepresents the court's rulings. The PCRA court noted that it never denied a request for raw DNA data, as Cuenas never sought a DNA expert. It also stated that it had not precluded Cuenas from accessing the latent prints had he retained a fingerprint expert, but rather ruled that Cuenas had not established sufficient cause for the appointment of a fingerprint expert. **See** PCRA Court Opinion, 10/13/20, at 20.

In any event, we agree with the PCRA court that Cuenas was not entitled to discovery here. Discovery at any stage of PCRA proceedings is only permitted upon a showing of exceptional circumstances. **See** Pa.R.Crim.P. 902 (E)(1). In arguing that such exceptional circumstances exist here, Cuenas merely asserts that the discovery "may arguably" support his claims regarding forensic experts and that the discovery is needed to vindicate his liberty interests and right to effective assistance of counsel. Given the undeveloped nature of this claim, it is waived. **See Commonwealth v. Love**, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that arguments that are not sufficiently developed are waived). Even if not waived, however, it is clear that Cuenas's boilerplate assertions do not establish that the court abused its discretion in concluding that there were no extraordinary circumstances here that warranted discovery.

Next, Cuenas asserts that counsel was ineffective for failing to subpoena Fernando Nieves to testify at trial. Nieves, a federal inmate, wrote a letter to the Philadelphia District Attorney stating that Martinez told him after the shooting that he had shot Officer Livewell in the leg and that "his boys got caught with the guns." In the letter, Nieves stated that he would be willing to testify for the Commonwealth as to what Martinez told him and asked for help with his case in exchange for that testimony. Although Martinez pled guilty to conspiring to the shooting with Cuenas, Cuenas asserts his counsel should have called Nieves to testify in his case. This claim warrants no relief.

There are two requirements for relief on the basis of a claim that counsel was ineffective for failing to call a certain witness:

> The first requirement is procedural. The PCRA requires that, to be entitled to an evidentiary hearing, a petitioner must include in his PCRA petition 'a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony.' 42 Pa. C.S.A. 9545(d)(1); Pa.R.Crim.P. 902(A)(15). The second requirement is substantive. Specifically, … a petitioner must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed or should have known of the witness; (4) the witness was prepared to cooperate and would have testified on defendant's behalf; and (5) the absence of such testimony prejudiced him and denied him a fair trial.

**Commonwealth v. Reid**, 99 A.3d 427, 438 (Pa. 2014).

Here, Cuenas did not attach a certification from Nieves to his PCRA petition or establish that Nieves was willing to testify for him. Cuenas's claim fails for these reasons alone. **See id.** Cuenas seems to suggest, however, that counsel should have subpoenaed and called Nieves to testify even if he was

- 17 -

unwilling to testify on Cuenas's behalf. The PCRA court found, though, that even had Cuenas subpoenaed and called Nieves to the stand, Nieves's testimony would have been inadmissible hearsay. Cuenas disputes this finding and argues that Nieves's testimony would have been admissible under the penal interest exception to hearsay, which applies to statements that:

> (1) exculpate the defendant from the crime for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interest to the declarant; and that they are made pre-trial or during the trial itself.

***Commonwealth v. Laudenberger,*** 715 A.2d 1156, 1161 (Pa. Super. 1998) (citation omitted). This exception is applicable only where there are existing circumstances that assure the trustworthiness and reliability of the declarations sought to be admitted. ***See id***.

Cuenas asserts that this exception applies here because "Martinez's confession exposed him to criminal liability" and he "mentioned in his confession that he shot Livewell in the leg, which corresponds to Livewell's wound." Appellant's Brief at 40. However, these assertions fall far short of establishing that the circumstances surrounding Martinez's alleged statements to Nieves assure the trustworthiness and reliability of those statements. Cuenas does not contend that Nieves is a person of authority or that he had an adverse interest to Martinez. Moreover, as the Commonwealth points out, the trustworthiness of Nieves's testimony is further undermined by the fact

that Nieves explicitly requested help in his own case in exchange for the testimony.

In addition, we agree with the Commonwealth that Martinez's statement did not, in fact, exculpate Cuenas. As the Commonwealth and the PCRA court both observed, Martinez pled guilty to conspiring *with Cuenas* in the shooting. *See* PCRA Court Opinion, 10/13/20, at 13. Martinez's purported statement also indicated that there was more than one actor involved in the shooting, so it in "no way precluded a finding that [Cuenas] was the other shooter." *Id.*[4] Given all of this, we agree with the PCRA court that Nieves's proposed testimony would not have been admissible at trial, and that counsel was not ineffective for failing to present such inadmissible hearsay. *See Reid*, 99 A.3d at 439 (holding that counsel cannot be deemed ineffective for failing to present inadmissible hearsay).

In his next claim, Cuenas alleges counsel was ineffective for failing to investigate and interview seven witnesses to the shooting that were mentioned in the neighborhood survey conducted by investigators in this case. This claim fails.

---

[4] This also shows that Cuenas was not prejudiced by counsel's failure to call Nieves, as Martinez's purported admission to being one of the shooters did not exclude Cuenas as the other shooter. Of course, in order to show that counsel was ineffective for failing to call a witness, Cuenas is required to show that he was prejudiced by the absence of the testimony. *See Reid*, 99 A.3d at 438. Cuenas has not done so here.

Although Cuneas concedes that the neighborhood survey was given to him during discovery, he claimed to no longer have the survey when he filed his supplemental PCRA petition raising this claim. Instead, Cuenas based his claim entirely on his handwritten notes relating to the content contained in the survey.

In its response to Cuenas's amended PCRA petition, the Commonwealth stated that it had provided another copy of the neighborhood survey to Cuenas. The PCRA court indicated the same in its 1925(a) opinion. **See** PCRA Court Opinion, 10/13/20, at 16. Despite this, the PCRA court noted that Cuenas had not supplemented his petition with any certifications from any of the witnesses documenting that their testimony would have been helpful to his defense. The PCRA court then denied relief on this basis.

Cuenas does not directly address the PCRA court's conclusion. Instead, he recycles the same argument he made in his amended PCRA petition that he is unable to support his ineffectiveness claim without being able to reference the actual neighborhood survey. Although Cuenas alleges in a footnote that the PCRA court denied his request to order the Commonwealth to provide a duplicate copy of the neighborhood survey, he does not point to the place in the record where this occurred. **See** Pa.R.A.P. 2119(c) (requiring the appellant to reference the place in the record where the matter referred to appears). He also does not address or refute the Commonwealth's assertion or the PCRA court's finding that the Commonwealth did, in fact, provide him

with a duplicate copy of the neighborhood survey. As his claim remains unsupported, we agree with the PCRA court that this claim offers Cuenas no basis for relief. **See Reid**, 99 A.3d at 438.

Next, Cuenas maintains that the PCRA court erred by finding that he is not entitled to relief on the basis of after-discovered evidence. Specifically, he maintains that the decision in an unrelated case, **Commonwealth v. Thorpe**, CP-51-CR-0011433-2008, provided him with after-discovered evidence that the detectives in the Philadelphia Homicide Unit, and in particular Detective James Pitts, engaged in a coercive and unconstitutional interrogation pattern and practice. We agree with the PCRA court that this claim also does not offer any basis for relief.

A petitioner is entitled to relief under the PCRA if he can show that his conviction was the result of "the unavailability at the time of trial of exculpatory evidence that subsequently became available and that would have affected the outcome of the trial if it had been introduced." 42 Pa. C.S.A. § 9543 (a)(2)(vi).[5] In order to obtain relief based on after-discovered evidence, the petitioner must prove that the allegedly new evidence: (1) has been discovered after the trial and could not have been obtained at or prior to the

---

[5] Cuenas mistakenly cites to 42 Pa.C.S.A. § 9545 (b)(1)(i) and (ii) in support of his claim. Those sections of the PCRA deal with the timeliness of a PCRA petition and are not implicated here as Cuenas's PCRA petition was timely filed.

conclusion of the trial by the exercise of reasonable diligence; (2) is not merely cumulative; (3) will not be used solely to impeach credibility; and (4) would likely compel a different verdict. **See Commonwealth v. D'Amato**, 856 A.2d 806, 823 (Pa. 2004).

Cuenas predicates his claim of after-discovered evidence on the decision in **Thorpe**, which "found ... that certain Homicide detectives [including Detective Pitts] used an unconstitutional interrogation pattern and practice rendering the statements taken from those individuals inherently unreliable." Appellant's Brief at 53.[6] He maintains that the "named detectives" in his case acted consistently with the unconstitutional interrogation pattern and practice identified in **Thorpe**, although the only detective Cuenas names in his argument section is Pitts. He argues that the jury would have been compelled to find reasonable doubt had they heard evidence about the detectives' unconstitutional interrogation practices both generally and in his case.

In rejecting this claim below, the PCRA court found that Cuenas failed to establish a sufficient nexus between Detective Pitts and his case. Detective Pitts was not the assigned detective in Cuenas's case, did not testify at Cuenas's trial, and did not interview any of the witnesses who testified at trial. As such, the PCRA court found that Cuenas had failed to establish that he was entitled to any relief based on the decision in **Thorpe**.

---

[6] We note that Cuenas did not provide a copy of **Thorpe**.

- 22 -

Once again, Cuenas does not directly address the PCRA court's conclusion in this regard. He does, however, contend that the police also engaged in coercion when interrogating subjects in his case. First, Cuenas maintains that Detective Pitts physically abused him. Specifically, Cuenas alleges Pitts beat him while he was in the interrogation room following his arrest and that he was taken to the hospital as a result. Cuenas, however, does not explain how this could be considered evidence he did not know about. Nor does he point to anything other than his own allegations to support his claim.

In any event, we agree with the Commonwealth that, even if these allegations were true, they would not have likely resulted in a different verdict. The Commonwealth did not prove Cuenas's guilt through any confession obtained from him, but did so through Officers Livewell and Issel's identifications, fingerprint and DNA evidence and Cuenas's incriminating statements to others. As such, Cuenas has not shown how a claim that Detective Pitts coerced him, even if proven, would entitle him to relief. **See D'Amato**, 856 A.2d at 823.

Cuenas also makes a series of allegations that three of the witnesses who made statements to the police, Carolos Garcia, Marie Rivera and Santos Martinez, were "supplied false material information" and otherwise coerced by the police. He appears to contend that this explains the discrepancy between these witnesses' statements to police and their testimony at trial.

In the first instance, this claim is waived as Cuenas fails to properly explain or develop it. *See Love*, 896 A.2d at 1287. Even if not waived, this claim would not offer any basis for relief. Cuenas does not offer any connection between these witnesses and Detective Pitts, other than Garcia's description of a detective Garcia says was present when he gave his statement to police who Cuenas speculates may have been Detective Pitts. Moreover, as the Commonwealth points out and Cuenas concedes, all three witnesses testified regarding their treatment by police at trial. As such, it cannot be said that this information constitutes "after-discovered evidence."[7]

Based on all of the above, we agree with the PCRA court that Cuenas has not established that he was entitled to any relief on the basis of any after-discovered evidence exposed by the decision in *Thorpe*.

In his only claim challenging the sentence imposed, Cuenas argues that counsel was ineffective for failing to object to his sentence because his convictions for conspiracy to commit aggravated assault and assault on a law enforcement officer should have merged for purposes of sentencing. We agree with the PCRA court that this claim is meritless.

---

[7] Cuenas regurgitates his argument that he believes Officers Iswell and Livewell's identification involved police misconduct as he believes the officers "conspired with detectives to manipulate evidence in order to falsely identify [Cuenas] as the shooter." Appellant's Brief at 61. Again, Appellant offers nothing but speculative and unsubstantiated assertions to support his claim. Moreover, the claim is without merit for the same reasons we rejected the same assertions Cuenas made in his first claim.

Offenses only merge for sentencing purposes if (1) the crimes arise from a single criminal act and (2) all of the statutory elements of one of the offenses are included in the statutory elements of the other. *See* 42 Pa.C.S.A.§ 9765.

Although Cuenas alleges that every element of assault on a law enforcement officer is present in conspiracy to commit aggravated assault, *see* Appellant's Brief at 74-75, this is simply not the case. As the PCRA court correctly found, assault on a law enforcement officer requires that the victim is a law enforcement officer and that the defendant discharged a firearm. *See* 18 Pa.C.S.A. § 2702.1(a). In contrast, conspiracy to commit aggravated assault does not require either of those elements. *See* 18 Pa.C.S.A. § 903(a).[8] Conspiracy to commit aggravated assault does, however, require an agreement, which is not an element of assault on a law enforcement officer. *Compare id. with* 18 Pa.C.S.A. § 2702.1(a). We agree with the PCRA court that counsel cannot be deemed ineffective for failing to raise this baseless claim. *See Sneed*, 45 A.3d at 1115.

In his final claim, Cuenas argues that he is entitled to relief on the basis of the cumulative impact of his ineffectiveness claims, even if they do not

---

[8] "A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid the other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903 (spacing condensed).

independently afford him any relief. This claim is specious in light of our Supreme Court's clear directive that "no number of failed claims may collectively attain merit if they could not do so individually." ***Commonwealth v. Tedford***, 960 A.2d 1, 56 (Pa. 2008).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/28/21